ROBERT L. MERRIWEATHER                                          PLAINTIFF

v.

UNITED PARCEL SERVICE, INC., *et al.*                          DEFENDANTS

---

## OPINION AND ORDER

Senior Judge Charles R. Simpson, III referred this matter to Magistrate Judge Lanny King for ruling on all discovery motions. (Docket # 16). This case was consolidated with *Snipes et al. v. Tropical Express, LLC, et al.*, 3:16-CV-00249-TBR-LLK, for discovery purposes. (Docket #14). Discovery in both cases is ongoing. Plaintiff Robert L. Merriweather ("Merriweather") filed a Motion to Compel certain discovery from Defendant United Parcel Service, Inc. ("Defendant UPS"). (Docket # 26). Defendant UPS filed its Response in opposition and Merriweather filed his Reply. (Docket # 29; # 33). For reasons detailed below, Merriweather's Motion to Compel is granted in part and denied in part. (Docket # 26).

This case arises out of a multi-vehicle accident that occurred on or about May 27, 2015, on I-65. (Docket # 1-1). Merriweather filed suit against multiple parties, including Defendant UPS and Defendant Jeremy J. Semmler ("Defendant Semmler"). (*Id.*). The Complaint alleges that Defendant Semmler was employed by and was driving the tractor trailer on behalf of Defendant UPS. (*Id.*). Count I of the Complaint alleges that Defendant UPS was negligent in hiring, training, entrustment, supervision, retention, and maintenance of its driver. (*Id.*). Count II of the Complaint alleges that Defendant Semmler was negligent in driving the tractor trailer on behalf of UPS. (*Id.*).

## Analysis

### *Legal Standard*

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." FED. R. CIV. P. 26(b)(1). Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. *Albritton v. CVS Caremark Corp.*, No. 5:13-CV-00218-GNS-LLK, 2016 WL 3580790, at *3 (W.D. Ky. June 28, 2016) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted)). However, the scope of discovery is not unlimited. "On motion or on its own, the court must limit the frequency or extent of discovery . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Id*. (quoting FED. R. CIV. P. 26(b)(2)(C)(iii)). The determination of "the scope of discovery is within the sound discretion of the trial court." *Cooper v. Bower*, No. 5:15-CV-249-TBR, 2018 WL 663002, at *1 (W.D. Ky. Jan. 29, 2018), *reconsideration denied*, 2018 WL 1456940 (W.D. Ky. Mar. 22, 2018) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)).

Federal Rule of Civil Procedure 33 governs interrogatories while Rule 34 governs requests to produce. Rule 33(b)(3) requires the responding party to answer each interrogatory "to the extent it is not objected to." FED. R. CIV. P. 33(b)(3). Similarly, Rule 34(b)(2)(B) requires a response to a document request to "either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons," and Rule

34(b)(2)(C) requires "[a]n objection to part of a [document] request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(B), (C). Federal Rules of Civil Procedure 33 and 34 are structured such that, in combination with Rule 26(g)(1), both the requesting party and the court may be assured that *all* responsive, non-privileged materials are being produced, except to the extent a valid objection has been made. *Heller v. City of Dall.*, 303 F.R.D. 466, 487 (N.D. Tex. 2014) (citing *Evans v. United Fire & Cas. Ins. Co.*, 2007 WL 2323363, at *1, 3 (E.D. La. Aug. 9, 2007) (emphasis in original)).

If a corporation fails to answer an interrogatory submitted under Rule 33 or a request to produce submitted under Rule 34, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request. FED. R. CIV. P. 37(a)(2)(B). Pursuant to Rule 37 of the Federal Rules of Civil Procedure, "a party may move for an order compelling disclosure or discovery," provided that the party certifies to the Court that it has, in good faith, conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. FED. R. CIV. P. 37(a)(1); *see id.* at (a)(3)(B)(iii)-(iv) (providing that a party may move to compel answers to interrogatories submitted under Rule 33 or to compel an inspection requested under Rule 34). The party who files a motion to compel discovery "bears the burden of demonstrating relevance." *Albritton v. CVS Caremark Corp.*, No. 5:13-CV-00218-GNS-LLK, 2016 WL 3580790, at *3 (W.D. Ky. June 28, 2016).

### *Local Rule 37.1 and Federal Rule of Civil Procedure 37(a)(2)(b)*

At the outset, Defendant UPS argues that Merriweather has failed to comply with both Federal Rule of Civil Procedure 37 and Local Rule of Civil Procedure 37.1 by not meeting and

conferring with its counsel on 1) the contents of the produced privilege log, 2) Request to Produce ("RPD") No. 6 under Section IV, Trip in Question, and 3) Defendant UPS' verification page to the first set of interrogatories, prior to filing the Motion to Compel. Further, Defendant UPS asserts that Merriweather failed to submit a certification of any attempts to resolve this dispute and only attached the pleadings and correspondence as exhibits.

Federal Rule of Civil Procedure 37 requires a motion to compel discovery to include a "certification that the movant has in good faith conferred or attempted to confer" in an attempt to resolve the dispute. FED. R. CIV. P. 37(a)(2)(b). Local Rule 37.1 states:

> "The Court will not entertain discovery motions unless counsel have conferred -- or attempted to confer -- with other affected parties in an effort to resolve their dispute. The moving party must attach to every discovery motion a certification that counsel have conferred and are unable to resolve their differences. The certification must detail counsel's attempts to resolve the dispute."

LR 37.1.

On February 14, 2018, Merriweather sent a letter to Defendant UPS seeking to resolve the parties' dispute regarding the discovery issues, later raised in its motion to compel, and specifically addressed the contents of the privilege log and UPS' verification page. (Docket # 26-5). On March 16, 2018, Defendant UPS supplemented its responses to the various interrogatories, which included a privilege log, but did not address the verification page. (Docket # 26-6; # 26-10). Counsel for both parties contacted the Court to discuss the remaining discovery issues. On April 30, 2018, the Court held a telephonic status conference to discuss Defendant UPS' discovery responses. (Docket # 25). The Court ordered Defendant UPS to present supplemental responses to Merriweather's requests by April 19, 2018. (Docket # 25). The Court further granted Merriweather leave to file a motion to compel if needed. (*Id.*). On April 9, 2018,

Merriweather attempted to resolve some of the discovery disputes and requested supplemental responses and documents. (Docket # 26-7). Defendant UPS responded to Merriweather's letter, agreeing to some of Merriweather's requests and objecting to others. (Docket # 26-8). Merriweather filed this Motion to Compel after these attempts to resolve the remaining discovery disputes failed. (Docket # 26).

Defendant UPS is correct; although Merriweather attached the parties' pleadings and correspondence as exhibits, he failed to submit any certification of the attempts to resolve this dispute. Despite the status conference with the Court on April 9, 2018, Merriweather was required to attach a certificate that detailed counsel's attempts to resolve the disputes. Nevertheless, the present motion and attached exhibits reflect that Merriweather made a good faith effort as contemplated by Rule 37(a)(1) to resolve the discovery issues before resorting to court action. Furthermore, it is clear from Defendant UPS' Response (Docket # 29) that any further negotiations between the parties would have been fruitless. Nowhere in its Response does Defendant UPS state that had Merriweather requested supplemental responses to the privilege log, verification page, and RPD, it would have provided them. Lastly, the motion is ripe for resolution. Therefore, Merriweather's failure to submit a certificate will be excused.

### UPS' Verification Page

Before addressing each interrogatory at issue individually, Merriweather argues that Defendant UPS' verification to the first set of interrogatories is insufficient because it is evasive and includes boilerplate language.

UPS' verification page provides:

"I hereby certify that the statements and answers to the above Interrogatories in UPS' Answers to Plaintiff's Interrogatories are based on available information and files, and

that they are true to my best knowledge and belief. The information in these answers is not based solely on my personal knowledge, and includes knowledge and information of the defendants, their agents and representatives, and also may include information obtained from documents and records. The particular wording and sentence structure may be that of your attorneys who assisted in the preparation of these answers, and therefore, does not necessarily purport to be my own precise language. No document provided with these answers is to be construed as an adoptive admission. Any such documents are supplied solely in aid of your discovery purposes."

(Docket # 26-11). Stephanie Maymon signed the verification. (*Id*.). Additionally, a notary public signed the verification and provided her state of registration and the date on which her commission expires. (*Id*.).

Federal Rule of Civil Procedure 33(b) governs answers and objections to interrogatories. The rule provides that interrogatories served upon a corporate party must be answered "by any officer or agent, who must furnish the information available to the party." FED. R. CIV. P. 33(b)(1)(B). To verify the truthfulness of the answers, "[t]he person who makes the answers must sign them." FED. R. CIV. P. 33(b)(5).

Merriweather argues that Defendant UPS's verification for the first set of interrogatories was signed by an individual that is not from Defendant UPS because it fails to indicate what the signatory's (Ms. Maymon's) role is and whether she has the authority to bind Defendant UPS to the answers provided. However, Rule 33 is rather broad and does not prescribe any particular form of verification. Rule 33 simply requires a corporate party to designate an agent to answer and sign the interrogatory responses. *See e.g. Chatman v. AMTRAK*, 246 F.R.D. 695, 700 (M.D. Fla. 2007). The responsibility for answering the interrogatories is upon the corporation to which they are directed and the corporation is the best judge to determine the identity of the person to make answers for it. After all, the corporation is responsible for the answers and will be bound by the answers.

Moreover, Merriweather fails to provide any case law that requires Defendant UPS to include anything more than an agent or officer of the corporation signing under oath that the answers provided are true to the best knowledge and belief. Accordingly, Merriweather's request that Defendant UPS produce an additional verification is DENIED.

### *Plaintiff Merriweather's First Set of Interrogatories*

Rule 33 requires the party answering interrogatories to furnish "information available to the party." FED. R. CIV. P. 33(b)(1)(B); *see also Murphy v. Piper*, 2018 WL 2538281, at *2 (D. Minn. June 4, 2018). The party objecting to interrogatories bears the burden of showing that the information sought is not reasonably available to it. *Id.*; *Lindholm v. BMW of N. Am., LLC*, 2016 U.S. Dist. LEXIS 14142, at *5 (D.S.D. Feb. 5, 2016). "If the answering party lacks necessary information to make a full, fair and specific answer to an interrogatory, it should so state under oath and should set forth in detail the efforts made to obtain the information." *Lindholm*, 2016 U.S. Dist. LEXIS 14142, at *5 (quoting *Essex Builders Grp., Inc. v. Amerisure Ins.*, 230 F.R.D. 682, 685 (M.D. Fla. 2005) (quotation omitted).

> **INTERROGATORY NO. 1:** Identify the person(s) who has (have) primary responsibility at United Parcel Service, Inc. now, and at the time of the wreck for:
> a. Operational safety;
> b. Compliance with federal and state regulations (including hours of operation);
> c. Driver training;
> d. Driver's Terminal Manager;
> e. Records custodian for driver personnel/discipline/qualification and other files and records regarding drivers;
> f. Information Technology and Electronically stored information;
> g. Safety Director;
> h. Director of Fleet Safety Program;
> i. The dispatcher(s) for the trip which ultimately resulted in the wreck;[1]

---

[1] Merriweather's requests for production and interrogatories are attached to Merriweather's Motion to Compel. See Dockets # 26-1, 26-3). Additionally, in a letter from Merriweather to Defendant UPS, dated February 14, 2018, Merriweather withdrew Interrogatory 1, parts j-l. (Docket # 26-5).

Merriweather requests Defendant UPS to identify the person(s) who has (have) primary responsibility regarding various listed tasks and job titles. Defendant UPS objects to the interrogatory as vague, overbroad, unduly burdensome, and not proportional to the case. (Docket # 26-2). Over its objections, Defendant UPS identifies Chris Jones as Defendant Semmler's supervisor at the time of the accident. (*Id.*).

Defendant UPS argues that Merriweather is seeking Rule 30(b)(6) designees without stating with reasonable particularity the issues or topics on which he would like the company to provide testimony. Merriweather concedes that the purpose of this interrogatory is to identify potential witnesses. (Docket # 26). The Court agrees with Defendant.

Rule 30(b)(6) of the Federal Rules of Civil Procedure provides the proper mechanism for an organization to designate a person most knowledgeable, after a party properly issues notice identifying with reasonable particularity the topics of the deposition. *Schall v. Suzuki Motor of Am., Inc.*, 4:14-CV-00074-JHM, 2017 WL 4050319, at *5 (W.D. Ky. Sept. 13, 2017). A corporate designation distinguishes the testimony of a fact witness from the testimony of a representative of the defendant organization itself. *Jecker v. Monumental Life Ins. Co.*, No. 3:12-CV-219-S, 2014 WL 4063568, at *1 (W.D. Ky. Aug. 15, 2014) (citing Fed. R. Civ. P. 30(b)(6)). By requesting the identity of persons with general responsibilities, Merriweather is using this interrogatory to identify potential witnesses for topics that would otherwise be covered in a 30(b)(6) deposition. By its terms, Rule 30(b)(6) does not permit the plaintiff to designate a deponent to speak for the corporate defendants. *Dillman v. Ind. Ins. Co.*, No. 3:04-CV-576-S, 2007 WL 437730, at *1 (W.D. Ky. Feb. 1, 2007). The proper vehicle for determining who will be an opposing party's 30(b)(6) witness is to issue notice that describes the matters for

examination. *See* Fed. R. Civ. P. 30(b)(6). Accordingly, Interrogatory No. 1 is improper. Merriweather's request to compel a response to Interrogatory No. 1 is DENIED.

> **INTERROGATORY NO. 3:** State whether the tractor or trailer contained or utilized an on-board recording device, an on-board computer, tachograph, trip monitor, trip recorder, trip master, video recorder, DriveCam, or device known by any other name which records and/or transmits information concerning the operation of the truck? If so, state the name and address of the person having custody of the graphs, printouts, raw data, videos, and/or other documentary evidence produced or capable of being produced by said machine regarding any data for any and all parts of the trip which ultimately was involved in the wreck which forms the basis of Plaintiff's Complaint.

Merriweather requests information regarding on-board recording devices. In responding to Interrogatory No. 3, Defendant UPS referenced and provided an Engine Control Unit ("ECM") download and tachograph for the tractor that Defendant Semmler operated. (Docket # 26-2).

Merriweather argues that Defendant UPS has failed to identify whether or not there are any other on-board recording devices, computers, etc. Defendant UPS asserts that it fully answered this interrogatory by providing the ECM download and the tachograph, both of which were referenced in its answer. Further, Defendant UPS asserts that there is no other responsive information, which is evident from the fact that its response to discovery references no other devices.

"The majority interpretation of Rule 33 requires that a corporation furnish such information as is available from the corporation itself or from sources under its control." *Westinghouse Credit Corp. v. Mountain States Mining & Milling Co.*, 37 F.R.D. 348, 349 (D. Colo. 1965) (citations omitted); *see also Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.,* 240 F.R.D. 401, 413 (N.D. Ill. 2007) ("Rule 33 imposes a duty to provide full answers to

interrogatories, including all the information within the responding party's knowledge and control.").[2]

Although Defendant UPS responded to two of the recording devices listed in the interrogatory, it failed to include whether it had any of the other listed devices, thereby rendering its response incomplete. Thus, Defendant UPS must amend its responses to include an explanation that its responses are complete to the best of its knowledge. Merriweather's request to compel a full response to Interrogatory No. 3 is GRANTED.

> **INTERROGATORY NO. 7:** Identify all persons and entities who audited the driver's logs for the six months prior to the wreck and the day of the wreck, and describe the process your company uses to audit a driver's logs.

Merriweather requests the identities of all persons and entities who audited Defendant Semmler's driver's logs for the six months prior to the wreck and the day of the wreck. Defendant UPS objects to the interrogatory as vague, ambiguous, overbroad, and not proportional to the needs of the case. (Docket # 26-2). Over its objections, Defendant UPS states that Defendant Semmler's driver logs were recorded electronically and that Indianapolis dispatch supervisors reviewed daily reports based on Defendant Semmler's driver logs to monitor compliance with hours of service and other DOT regulations in the six months prior to the accident. (*Id.*). In its supplemental answer, Defendant UPS states that Rick Runnells, an

---

[2] The Advisory Committee notes to the 1993 Amendments of Rule 33(b) indicate that one of the purposes of the rule is to "emphasize the duty of the responding party to provide full answers" to interrogatories. FED. R. CIV. P. 33(B) advisory committee's note to 1993 amendment. That duty is further highlighted by Federal Rule of Civil Procedure 37(a)(4), which provides that an evasive or incomplete answer is deemed to be no answer at all and can lead to the imposition of sanctions upon the party whose answer is either evasive or incomplete. FED. R. CIV. P. 37(a)(4). Moreover, the concept of requiring full and complete responses to discovery requests is reinforced by Federal Rule of Civil Procedure 26(g)(1), which states that "[b]y signing, an attorney or party certifies that to the best of the person's knowledge, information and belief formed after a reasonable inquiry, the request, response, or objection is ... consistent with these rules ... and not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation." FED .R. CIV. P. 26(g)(1)(B)(i)(ii).

employee of UPS who may only be contracted through counsel, potentially reviewed daily reports at that time. (Docket # 26-9).

Merriweather argues that Defendant UPS' response is evasive as Defendant UPS clearly knows whether Rick Runnells reviewed daily reports. Merriweather contends that Defendant UPS failed to fully identify Rick Runnells as requested in his Interrogatories Definition Number 11.[3] Conversely, Defendant UPS argues that is has answered with the information that it has responsive to this interrogatory. Defendant UPS asserts that based on the best information available at this time regarding events several years ago, it appears that Rick Runnells would have reviewed daily reports, which was a list of drivers with less than thirteen hours of available driving time remaining in the driving week. (Docket # 26-2). Also, based on the best available information at this time, Defendant UPS asserts that Defendant Semmler's schedule was such that he would not be within 13 hours of the allotted weekly hours. (Docket # 29). Therefore, Defendant UPS asserts that there would not have been any daily report documents that existed regarding Defendant Semmler. (*Id.*).

Here, it is unclear whether Defendant UPS is asserting that due to Defendant Semmler's schedule there would not have been any daily reports to review for the six months prior to the accident or whether Defendant UPS is only referring to a limited period. Furthermore, Defendant UPS does not actually state whether or not Rick Runnells actually reviewed Defendant Semmler's logs. Defendant UPS failed to provide any explanation of its steps to make a reasonably inquiry into who audited Defendant Semmler's driver's logs for the six months prior to the accident and the date of the accident. Defendant UPS is in the best position to determine

---

[3] Under Definition 11(a), Defendant UPS was required to state his or her full name, residential and business address, home and work telephone numbers, employer and employer's address, employment position held, date employment began, and relationship to Defendant UPS. (Docket # 26-1).

whether there were/are any daily reports for Defendant Semmler and who reviewed those daily reports if and when they existed.[4]

Moreover, once Defendant UPS determines who actually reviewed Defendant Semmler's reports, it should provide to Plaintiff Merriweather the complete identification information. A party must provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]" *Escalera v. Bard Medical, a Division of C.R. Bard, Inc.*, 4:16-CV-00121-JHM, 2017 WL 4012966, at *6 (W.D. Ky. Sept. 12, 2017) (quoting FED. R. CIV. P. 26(a)(1)(A)(i)). As such, Plaintiff Merriweather's request to compel a response to Interrogatory No. 7 is GRANTED.

> **INTERROGATORY NO. 10:** If you contend that anyone other than a named Defendant has any responsibility of any kind for the wreck, and/or for any of the damages alleged in the Plaintiff's Complaint:
> a. identify each such person and or entity;
> b. describe in detail the basis for their responsibility;
> c. identify all person(s) who have any knowledge regarding this issue; and
> d. identify each document which supports your contention.

Interrogatory No. 10 is a contention interrogatory and seeks to clarify the basis for or scope of Defendant UPS' legal claims. Essentially, Interrogatory No. 10 asks Defendant UPS to state the facts upon which it bases its claims or defenses and asks for an opinion or contention that relates to the fact or the application of law to the facts. *See Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418, 421 n.2 (6th Cir. 1998) ("The general view is that contention interrogatories are a perfectly permissible form of discovery, to which a response ordinarily would be required.") *aff'd sub nom. Cunningham v. Hamilton Cty., Ohio*, 527 U.S. 198 (1999). Defendant UPS

---

[4] Defendant UPS later asserts in RPD Nos. 2 and 3, Driver, that it did not preserve Defendant Semmler's logs.

objects to this Interrogatory to the extent it seeks to uncover Defendant UPS' mental impressions and trial strategies. (Docket # 26-2). Defendant UPS states that the facts behind the subject accident are equally available to Merriweather and discovery is ongoing. (*Id*.). However, Defendant UPS points to its response to Interrogatory No. 9 and states that neither Defendant Semmler nor Defendant UPS has any fault for causing the accident or Merriweather's injuries. (*Id*.).

Merriweather argues that Defendant UPS failed to answer this interrogatory by including boilerplate objections and reserving the right to supplement its answer. (*See id*.). However, Defendant UPS fully responded to this interrogatory by pointing to its response to Interrogatory No. 9 where it identified each person it contends to have responsibility for the accident, described the basis for that person's responsibility, identified each person with knowledge regarding the issue, and identified documents that support its contention. (*Id*.). Moreover, Defendant UPS only objected to the interrogatory to the extent that it seeks to uncover its attorney's mental impressions and trial strategies, which would be protected from discovery. *See Roach v. Hughes*, No. 4:13-CV-00136-JHM, 2015 WL 13548427, at *5-6 (W.D. Ky. Aug. 3, 2015) (discussing the work-product doctrine). Merriweather fails to show why Defendant UPS' responses are insufficient. As such, Merriweather's request to compel a response to Interrogatory No. 10 is DENIED.

> **INTERROGATORY NO. 16:** For each insurance policy of any kind that does or may provide any coverage on behalf of any Defendant (whether it is your policy or anyone else's policy) for damages/injuries alleged in this case, provide: name of insurer; policy number; limits of coverage; the name(s) of all insureds; and state whether any insurer has offered a defense under a reservation of rights or otherwise contested coverage for the subject case.

Merriweather requests proof of insurance coverage of up to ten million dollars. (Docket # 26-5). Defendant UPS responds to Interrogatory No. 16 by providing the name of its insurance company, the policy number, and coverage for up to five million dollars. (Docket # 26-2). Defendant UPS further responds that it has not been denied coverage and is not being provided a defense in this action under a reservation of rights. (*Id*.). In letters dated February 14, 2018 and April 9, 2018, Merriweather requested that Defendant UPS answer Interrogatory No. 16 with information on coverage of up to ten million dollars. (Docket # 26-5; # 26-7). In a letter dated April 19, 2018, Defendant UPS responded that it adequately responded to the interrogatory and that providing identification of any additional coverage is overbroad and disproportionate to the needs of the case (Docket # 26-8).

Under Federal Rule of Civil Procedure 26(a)(1)(B)(iv), a party must provide to the other party ***any*** insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment. FED. R. CIV. P. 26(a)(1)(B)(iv) (emphasis added). "This obligation inherently includes an exercise of legal judgment regarding the possible availability of coverage under the specific terms of any insurance policies held by a party." *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1230 (10th Cir. 2015). The purpose of the disclosure is "to enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation." *Borom v. Town of Merrillville*, No. 2:07 CV 98, 2008 WL 155018, at *2 (N.D. Ind. Jan. 15, 2008) (quoting Rule 26 cmt. (1970)); *see also Fireman's Fund Ins. Co. v. Cunningham Lindsey Claims Mgmt., Inc.*, 2005 U.S. Dist. LEXIS 32116, at *8 (E.D.N.Y. June 28, 2005); *In re Anicom Inc. Sec. Litig.*, 2002 WL

31496212 (N.D. Ill. Nov. 8, 2002). Under Rule 26(a)(1)(B)(iv), Defendant UPS should have provided information for both policies.

Defendant UPS argues that the facts demonstrate that five million dollars in coverage will be sufficient to cover the claims that have been made to date. However, in order to address Defendant UPS' argument, the Court would be required to perform at least a partial valuation of the case to determine the likelihood of Merriweather's recovery of a judgment that exceeds five million dollars. The Court declines to perform such an analysis.

Rule 26 disclosures are mandatory and requires the production of "*any* insurance agreement" that could potentially "satisfy *all or part* of a possible judgment" in the case. FED. R. CIV. P. 26(a)(1)(A)(iv) (emphasis added). Although there is no indication that the claims would be in excess of Defendant UPS' five-million-dollar policy, there is likewise no indication that a judgment would not be in excess of Defendant UPS' five-million-dollar policy. The phrase "may be liable" indicates that regardless of whether there is actual liability, the mere potential of satisfying a judgment requires the production of the insurance agreement under Rule 26. *See Regalado v. Techtronic Indus. N. Am., Inc.*, 2015 WL 10818616, at *1-2 (N.D. Tex. Feb. 24, 2015); *Garcia v. Techtronic Indus. N. Am.*, 2015 WL 1880544, at *2-3 (D.N.J. Apr. 22, 2015). Defendant UPS has not provided the Court with any evidence that the damages Merriweather seeks are in any way capped and the Court will not limit discovery as if they were.

Lastly, Defendant UPS does not explain how or why proof of additional coverage is disproportionate to the needs of the case. *Escalera v. Bard Med.*, No. 4:16-CV-00121-JHM, 2017 U.S. Dist. LEXIS 147327, at *9 (W.D. Ky. Sep. 12, 2017) (citation omitted)

("Proportionality cannot be demonstrated using boilerplate language."). Accordingly, Merriweather's request to compel a response to Interrogatory No. 16 is GRANTED.

### *Plaintiff Merriweather's Requests to Produce*

"In responding to [Rule 34] discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, FED. R. CIV. P. 26(g)(1), the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *Heller v. City of Dall.*, 303 F.R.D. 466, 485 (N.D. Tex. 2014) (quoting *Atcherley v. Clark*, 2014 WL 4660842, at *1 (E.D. Cal. Sept. 17, 2014)); *accord Kennedy v. Baldwin*, 2014 WL 549529, at *2 (D. Utah Feb. 11, 2014) ("If no other responsive documents exist, the responding party should have stated as much in its response."); *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 2010 WL 502721, at *14 (D. Colo. Feb. 8, 2010*)* ("It is well-settled that a responding party's obligations under Rule 34 do not extend to non-existent materials.").

### I. DRIVER

**REQUEST NO. 2:** Color copies of all safety and log audits of the driver while in your employee, to specifically include the day of the collision.

**REQUEST NO. 3:** Copies of any and all documents that communicated the results of any safety or log audit to the driver as well as documents of any corrective action.

Merriweather requests color copies of all safety and log audits of the driver, which specifically include the date of the collision, and copies of any and all documents that communicated the results of any safety or log audit to the driver and any documents of corrective action. Merriweather argues no electronically stored information ("ESI") has been produced and that the "daily reports" listed in interrogatory # 7 should be produced. Further, Merriweather

asserts that Defendant UPS has a duty to preserve the "daily reports" under Federal Rule of Civil Procedure 37(e).

Conversely, Defendant UPS contends that it answered these requests and has no responsive information. (Docket # 29). Defendant UPS asserts that it had no duty to preserve any information related to Defendant Semmler's log audits at the time of the accident, as it preserved his logs for the seven days preceding the accident and the date of the accident. (*Id*.). In essence, Defendant UPS contends that it did not preserve the daily reports because Defendant Semmler had no hour violations during that relevant time period, and there was no indication of negligence or that hours of service were at issue in this case. (*Id*.). Defendant UPS relies on Officer Moritz's testimony where he stated that he checked the driver logs and determined there were no violations. (*Id*.). Defendant UPS emphasizes that there has been no indication in the evidence or from witnesses deposed, including the investigating police officer, that Defendant Semmler's hours of service are at issue. (*Id*.). Defendant UPS also argues that Defendant Semmler's schedule was such that he was not usually, if ever, within the 13 hours of the limit of allotted hours of service time. (*Id*.). As such, Defendant Semmler would not have come up as an alert on the daily reports regarding hours of service and there would be no "audit" documents responsive to these requests. (*Id*.).

Defendant UPS has stated with "sufficient specificity" that it conducted a reasonable inquiry and exercised due diligence in searching for and explaining why it does not have Defendant Semmler's daily reports. Fed. R. Civ. P. 26(g)(1). Accordingly, Merriweather's request for documents pursuant to RPD Nos. 2 and 3 is GRANTED in part and DENIED in part. RPD Nos. 2 and 3 are granted to the extent that Defendant UPS shall supplement its responses

and state with sufficient specificity that it conducted a reasonably inquiry and explain why it does not have Defendant Semmler's daily reports.

> **REQUEST NO. 7:** Copies of the driver's signed receipt (to include electronic signatures) for any materials, brochures, books, policies, standards, safety matters, or other written material provided by the employer to the driver.

Merriweather requests copies of the driver's signed receipt for any materials provided by the employer to the driver. Defendant UPS objects to this request as overly broad and disproportionate to the needs of the case. (Docket # 26-4). Over its objections, Defendant UPS points to Defendant Semmler's personnel file and driver qualification file, as well as, the Certificate of Receipt, UPS 1104. (Docket # 26-4; 26-6).

Merriweather argues that although he has received a copy of a signed receipt for drug and alcohol policies, he has received no other receipts and does not know whether any other signed receipts exist. Defendant UPS only states that there are no further documents responsive to this request in its Response. (Docket # 29). Therefore, Merriweather's request to compel documents pursuant to RPD No. 7 is GRANTED in part and DENIED in part. RPD No. 7 is granted to the extent that Defendant UPS shall provide a supplemental response stating that it has no other documents.

## II. TRUCK
> **REQUEST NO. 2:** Produce copies of any and all satellite communications and e-mail for the seven days prior to the collision, the day of the collision, and the day after the collision. Produce all recorded Electronic Control Module (ECM), Event Data Recorder (EDR), and/or sensing Diagnostic Module (SDM), video, DriveCam, or other computer or electronic data to this truck, driver, or wreck.

Merriweather requests copies of all satellite and e-mail communications for the seven days prior to the collision, the day of the collision, and the day after the collision. Defendant UPS objects to this request as overly broad, vague, and ambiguous. (Docket # 26-4). Over its

18

objections, Defendant UPS points to the ECM data download from the UPS tractor. (*Id.*). Defendant UPS also points to the tachograph. (Docket # 26-9).

Merriweather argues that Defendant UPS has, is, or was in control of this electronically stored information ("ESI"). Conversely, Defendant UPS asserts that it has produced the ECM and tachograph, which are the only computer or electronic data related to this truck, driver and/or accident. (Docket # 29). In its Response, Defendant UPS asserts that there are no other satellite communications or e-mails from the tractor. (*Id.*).

Rule 34 requires a party "to produce documents that already exist "but does not require a party "to create a document in response to a request for production." *Commins v. NES Rentals Holdings, Inc.*, No. 3:16CV-00608-GNS, 2018 WL 3186983, at *10 (W.D. Ky. June 28, 2018) (quoting *Harris v. Advance Am Cash Advance*, 288 F.R.D. 170, 174 (S.D. Ohio 2012) (citing *In re Porsche Cars, N.A., Inc.*, 2012 WL 4361430, at *9 (S.D. Ohio Sept. 25, 2012)); *see also Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 2010 WL 502721, at *14 (D. Colo. Feb. 8, 2010) ("It is well-settled that a responding party's obligations under Rule 34 do not extend to non-existent materials."). Defendant UPS has no obligation to create documents that do not exist. Nevertheless, Merriweather's request to compel documents pursuant to RPD No. 2 is GRANTED to the extent that Defendant UPS shall provide a supplemental response stating that it has no other documents.

### III. INVESTIGATION AND FACTS

**REQUEST NO. 1:** Copies of all photographs, still or motion pictures, plans, drawings, blueprints, sketches, diagrams, computer simulations, or any other demonstrative evidence or visual reproductions in your possession or control concerning the collision, the wreck scene, the roadways involved, the vehicles (to include the trailer) involved in the wreck, the parties, the injuries alleged by any party, or any issue relevant to this lawsuit. (This request specifically includes any surreptitious surveillance, photographs,

films, and tapes of the plaintiffs.) (Photographs should be produced in .jpg format in taken or stored digitally.)

**REQUEST NO. 2:** Copies of all wreck or incident reports, other than the police report, involving this collision.

**REQUEST NO. 14:** A copy of all documents examined, used, or considered by the company in determining the preventability of this wreck.

In RPD Nos. 1, 2 and 14, Merriweather requests: (1) all photographs concerning the collision, the wreck scene, the roadways involved, the vehicles involved in the wreck, and the parties; (2) copies of all wreck or incident reports that involve this collision; and (14) all documents examined, used, or considered by Defendant UPS in making the preventability determination. Defendant UPS objects to all three requests to the extent they seek documents that are subject to the attorney-client and work-product privileges. (Docket # 26-4).

"The work-product doctrine protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process." *Shaheen v. Progressive Cas. Ins. Co.*, No. 5:08-CV-00034-R, 2012 WL 3644817, at *5 (W.D. Ky. Aug. 24, 2012) (quoting *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) (citation omitted)); *see also United States v. Nobles*, 422 U.S. 225, 236-39 (1975). Rule 26(b)(3) divides work product into two categories: "ordinary" work-product and "opinion" work- product. *See In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986); *Cobble v. Value City Furniture*, No. CIV.A. 3:06-CV-631, 2008 WL 114937, at *2 (W.D. Ky. Jan. 10, 2008) (quoting *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000)). Ordinary work-product is (1) "documents and tangible things"; (2) "prepared in anticipation of litigation or for trial"; (3) "by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3)(A). "Opinion work-product" is "the mental impressions,

conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FED. R. CIV. P. 26(b)(3)(B). The work-product doctrine provides ordinary work-product only a qualified protection against discovery while opinion work-product receives almost absolute protection from discovery. *Roach v. Hughes*, No. 4:13-CV-00136-JHM, 2015 WL 13548427, at *5 (W.D. Ky. Aug. 3, 2015); *see* FED. R. CIV. P. 26(b)(3)(B); *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002); *United States v. Leggett & Platt, Inc.*,542 F.2d 655, 660 (6th Cir. 1976). The work-product doctrine does not protect facts concerning the creation of work-product or facts contained within work-product. *Roach*, 2015 WL 13548427, at *6.

The Sixth Circuit has adopted a two-part test that asks "(1) whether a document was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose, and (2) whether that subjective anticipation was objectively reasonable." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (citing *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006)). "Because documents are not protected if they were created for nonlitigation purposes, regardless of content, '[d]etermining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question.'" *Young v. Chapman*, No. 3:14-CV-666-JHM-CHL, 2016 U.S. Dist. LEXIS 56409, at *18 (W.D. Ky. Apr. 27, 2016) (quoting *Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006) (citation omitted)); *see also Smith v. Marten Transp., Ltd.*, 2010 WL 5313537, at *4 (D. Colo. Dec. 17, 2010) (holding that original investigation report was not privileged when produced in the ordinary course of business to investigate multi-car accident involving one of defendant's trucks and drivers). The burden is on the party claiming protection to show that

anticipated litigation was the "driving force behind the preparation of each requested document." *Young v. Chapman*, 2016 U.S. Dist. LEXIS 56409, at *12 (W.D. Ky. Apr. 27, 2016). If a document is prepared in anticipation of litigation, the fact that it also serves an ordinary business purpose does not deprive it of protection. *Id.* (citation omitted).

For RPD No. 1, Merriweather concedes that Defendant has already produced photographs that were taken the same date of the accident. However, Merriweather argues that he is entitled to have the photographs listed on Defendant UPS' privilege log that were taken one day after the accident by its consulting expert. Merriweather argues that the photographs taken by Defendant UPS' consulting expert are not "work product" because they deal with facts, and they in no way reveal any opinions the expert may have. However, photographs could easily contain the mental impressions and theories of the case of the consulting expert who was investigating and taking the photographs. *Gonnuscio v. Seabrand Shipping*, 1997 WL 118436, at *1 (D. Or. Mar. 11, 1997).

Even if the pictures are considered work-product, Merriweather argues that he has a substantial need for the photographs because he was in the hospital and having surgery when they were taken and they cannot otherwise be re-created. The privilege log lists "Consulting Expert Photos of UPS Equipment and scene" that were taken by a consulting expert on May 28, 2015, the day after the accident. (Docket # 26-10). Defendant UPS argues that Merriweather has failed to demonstrate a substantial need for these photographs, which were taken one day after

the accident, because it gave Merriweather hundreds of photographs that were taken the day of the accident. [5]

Indeed, nothing suggests that the withheld photographs contain vital information which can be obtained only by viewing them and not from the other pictures. *Laws v. Stevens Transp., Inc.*, 2013 WL 941435, at *4 (S.D. Ohio Feb. 19, 2013); 1997 WL 118436, at *1 (D. Or. Mar. 11, 1997). Accordingly, Merriweather's request to compel Investigation and Facts, RPD No. 1 is DENIED. Nevertheless, it is unclear from the privilege log how many photographs are being withheld, where the photographs were taken, and what they depict. Therefore, Defendant UPS shall supplement its privilege log and provide more information about the different types of pictures that its consulting expert has taken.

For RPD No. 2, Merriweather argues that the internal accident investigation report, completed on May 27, 2015 by Defendant UPS is performed as part of Defendant UPS' business process. Defendant UPS maintains that even though the internal accident investigation report serves an ordinary business purpose, it was also prepared in anticipation of litigation and should therefore be protected. However, Defendant UPS has failed in carrying its burden of showing that the driving force behind preparing the internal investigation report was because of the anticipated litigation rather than its ordinary business purpose. *See Troutman v. Louisville Metro Dep't of Corr.*, No. 3:16-CV-742-DJH, 2018 WL 3041079, at *4 (W.D. Ky. June 19, 2018). Defendant UPS only makes a conclusory statement that the report is privileged because it reasonably anticipated litigation on the date of the accident; Defendant UPS has not shown

---

[5] Defendant UPS avers that it produced all of the photographs taken on the day of the incident, which include 102 photographs taken by the Kentucky State Police, 107 photographs taken by Defendant UPS' insurance adjuster, 34 photographs taken by the media, and 13 photographs taken by Defendant Semmler. (Docket # 29).

whether it prepared the report "because of" litigation. Therefore, Merriweather's request to compel to compel documents pursuant to RPD No. 2 is GRANTED; Defendant UPS shall produce the Internal Investigation Report.

For RPD No. 14, Defendant UPS argues that Merriweather seeks information concerning self-critical analysis and subsequent remedial measures in violation of Federal Rule of Evidence ("FRE") 407. Defendant UPS contends that evidence of preventability determinations are regulatory and remedial under FRE 407 and should not be admissible or discoverable. Contrary to Defendant UPS' assertion, Rule 407 "governs the admissibility of evidence," not "pretrial discovery," *Laws v. Stevens Transp., Inc.*, 2013 WL 941435, at * 3 (S.D. Ohio Mar. 8, 2013), and affects discoverability only insofar as it helps discern whether a document is "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1); *see also Cohalan v. Genie Indus., Inc.*, 276 F.R.D. 161, 166 (S.D.N.Y. 2011) (although Rule 407 helps delineate "what is admissible[, it] does not define what is discoverable"); *Bernat v. Cal. City*, 2010 WL 4008361, at * 5 (E.D. Cal. Oct 12, 2010) ("[T]hough the evidence discovered may not, ultimately, be admitted at trial, this is no basis for refusing to disclose it during discovery."); *Stalling v. Union Pac. R.R. Co.*, 2003 WL 21317297, at *10 (N.D. Ill. June 5, 2003) ("Federal Rule of Evidence 407…is not a rule governing pretrial discovery."), *objections overruled by* 2003 WL 21688235, at *8 (N.D. Ill. July 17, 2003). Furthermore, other courts have held that investigations or preventability determinations conducted by defendants in the ordinary course of business are not subject to protection. *See Venator v. Interstate Res., Inc.*, 2015 WL 6555438, at *4 (S.D. Ga. Oct. 29, 2015); *Laws v. Stevens Transp., Inc.*, 2013 WL 941435, at * 5 (S.D. Ohio Mar. 8, 2013).

At this stage, the Court cannot predict how Merriweather will use at trial the documents he obtained in discovery. *See Laws*, 2013 WL 941435, at * 3 ("It is certainly possible that plaintiffs will wish to use [the discovery materials to impeach] -- but they will not know that until they take discovery on the issue."). Information does not need to be admissible in evidence for it to be discoverable. *Martin v. Posey*, No. 2:15-cv-2294, 2017 WL 412876, at *3 (S.D. Ohio Jan. 31, 2017) (citing Fed. R. Civ. P. 26(b)(1) (citation omitted). These documents are relevant and must be produced. Accordingly, Merriweather's request to compel documents pursuant to RPD No. 14 is GRANTED; Defendant UPS shall produce all documents that it examined, used, or considered in determining the preventability of this wreck.

> **REQUEST NO. 4:** Copies of all records generated by any on-board recording device, whether computer, video, or other, not previously produced, with which the truck was equipped for the seven (7) days prior to the collision, the day of the collision, and one (1) day after the collision in question. (Plaintiff reserves the right to ask for additional materials beyond the requested time frame, in its sole discretion. Should Plaintiff determine it is necessary and requests that all materials be retained until the conclusion of this case).

Merriweather requests copies of all records generated by any on-board recording device with which the truck was equipped for the seven days prior to the collision, the day of the collision, and one day after the collision. Defendant UPS object to this request as vague and ambiguous. (Docket # 26-4). Over its objections, Defendant UPS points to Defendant Semmler's driver logs for the seven days prior to the accident. (*Id*.).

Merriweather argues that Defendant UPS has failed to produce the requested materials and that Defendant UPS has not stated whether it is in possession of video. Merriweather asserts that no ESI has been produced. Defendant UPS argues that Defendant Semmler's driver logs

were produced in addition to the ECM download and tachograph from the tractor. Defendant UPS further asserts that it has no videos to produce.

Merriweather's request to compel documents pursuant to RPD No. 4 is GRANTED. Defendant UPS shall supplement its response to include whether it has any on-board recording devices, whether it conducted a reasonable inquiry for any other listed devices, and whether it was withholding any of the listed devices. If no other recording devices exist, Defendant UPS must state that it has produced all responsive documents in its possession or control.

> **REQUEST NO. 5:** Copies of all records generated through the use of any satellite or GPS system (such as Qualcomm or Garmin) with which the truck and/or trailer was equipped at the time of the wreck, or from any similar system, for the seven (7) days prior to the collision, the day of the collision, and one (1) day after the collision and identify the system from which such information was obtained. This includes but is not limited to UPS reports available through Report EDGE. (Plaintiff reserves the right to ask for additional materials beyond the requested time frame, in its sole discretion. Should Plaintiff determine it is necessary and requests that all materials be retained until the conclusion of this case).

Merriweather requests copies of all records generated through the use of any satellite or GPS system with the truck and/or trailer equipped at the time of the wreck, or from any similar system, for the seven (7) days prior to the collision, the day of the collision, and one (1) day after the collision and identify the system from which such information was obtained. Defendant UPS objects to this request as vague and ambiguous. (Docket # 26-4). Over these objections, Defendant UPS states that no GPS data related to this accident was recoverable. (*Id.*).

Merriweather argues that Defendant UPS needs to produce the requested documents if they exist. As explained above, Defendant UPS stated in its response to the RPD that these documents do not exist. (*Id.*). Defendant UPS has no obligation to create documents that do not

exist. Merriweather fails to explain why Defendant UPS' response is insufficient. Therefore, Merriweather's request to compel documents pursuant to RPD No. 5 is DENIED.

> **REQUEST NO. 7:** Copies of all witness statements obtained from any person about any information relevant to any issue in this lawsuit, including, but not limited to, the issue of liability or damages.

Merriweather requests copies of all witness statements obtained from any person about any information relevant to any issue in this lawsuit. Defendant UPS objects to this request to the extent that it seeks information protected by the attorney-client privilege or work-product doctrine. (Docket # 26-4). Over its objections, Defendant UPS states that it has no non-privileged information responsive to this request. (*Id*.).

Merriweather argues that he is entitled to the witness statements listed on Defendant UPS' privilege log because they are relevant, factual statements, taken close in time to the wreck while Plaintiff was in the hospital. On the privilege log, Defendant UPS lists two written statements from Jeremy Semmler and Kenny Gregory that were prepared on the date of the accident. The receivers listed for both entries are the UPS Safety/UPS Risk Management personnel. Also listed on the privilege log is a recorded statement of co-Defendant Anthony Lee that was prepared by UPS' insurance adjuster and received by Defendant UPS and its Insurance Carrier. Merriweather does not challenge Defendant UPS' assertion that the requested statements are covered by the attorney-client privilege and/or the work product doctrine. Rather, Merriweather argues that he has a substantial need for the statements.

District courts in this circuit have recognized that statements taken shortly after the event in question are more acute and "unique" in that they provide an immediate impression of the facts. *Howard v. Fowler Bros.*, No. 5:10-CV-198, 2011 WL 3438407, at *2 (W.D. Ky. Aug. 4,

2011); *Stout v. Norfolk & W. R. Co.*, 90 F.R.D. 160, 162 (S.D. Ohio 1981). Here, Defendant UPS was in the unique position of being able to interview key witnesses on the same day of the accident, while the same opportunity was unavailable to Merriweather. *See Howard*, 2011 WL 3438407, at *2; *Stout v. Norfolk & W. Ry. Co.*, 90 F.R.D. 160, 162 (S.D. Ohio 1981). "Presumably, these statements provide facts essential to Plaintiff's case." *Howard*, 2011 WL 3438407, at *2 (citing *Stout*, 90 F.R.D. at 161 (S.D. Ohio 1981) (noting that the contemporaneous statements are "essential to developing the fact pattern"). Merriweather has shown a substantial need for the written statements by Defendant Jeremy Semmler and Kenny Gregory that were taken on the date of the accident. Accordingly, Merriweather is entitled to their production.

Unlike the written statements that were given by witnesses to the accident on the date of the accident, the third recorded statement by co-Defendant Anthony Lee was taken by Defendant UPS' insurance adjuster on August 11, 2015, close to three months after the accident. Plaintiff Merriweather has not demonstrated a substantial need for the statement, especially since he still has the opportunity to depose Defendant Anthony Lee. A substantial need for the discovery of work product does not exist where the same information can be obtained by deposition or other discovery methods. *See Handsome, Inc. v. Town of Monroe*, 2014 WL 348196, at *6 (D. Conn. Jan. 31, 2014); *Gov't Emps. Ins. Co. v. Saco*, 2013 WL 5502871, at *2 (E.D.N.Y. Oct. 2, 2013); *Miller v. Federal Express Corp.*, 186 F.R.D. 376, 388 (W.D. Tenn. 1999). Accordingly, Merriweather's request to compel documents pursuant to RPD No. 7 is GRANTED in part and DENIED in part. RPD No. 7 is granted to the extent that Defendant UPS shall produce the

written statements prepared by Jeremy Semmler and Kenny Gregory. However, Plaintiff's request to compel the recorded statement by co-Defendant Anthony Lee is denied.

> **REQUEST NO. 9:** Copies of all e-mails or electronic correspondence between any of the defendants and the driver for the seven (7) days prior to the collision, the day of the collision, and the day after the collision. (Plaintiff reserves the right to ask for additional materials beyond the requested time frame, in its sole discretion. Should Plaintiff determine it is necessary and requests that all materials be retained until the conclusion of this case).

Merriweather requests copies of all e-mails or electronic correspondence between any of the defendants and the driver for the seven (7) days prior to the collision, the day of the collision, and the day after the collision. Defendant UPS objects to this request as vague, ambiguous, overly broad, and disproportionate to the needs of this case. (Docket # 26-4). Over its objections, Defendant UPS states "none." (*Id.*).

In its Response, Defendant UPS states that this request seeks information protected by the work-product privilege. (Docket # 29). However, Defendant UPS failed to timely assert its objections based on privilege when it initially responded to the discovery request. Further, Defendant UPS fails to explain how or why these e-mails or correspondence would be considered work-product.

Merriweather argues that Defendant UPS should be clear as to whether the documents never existed, whether the driver did not engage in any electronic correspondence, or whether any electronic correspondence was retained, and, if it was not retained, when it was destroyed. The Court agrees with Merriweather. For the reasons set forth in Driver, RPD No. 7, Defendant UPS shall supplement its response and state with sufficient specificity whether Defendant UPS made a reasonable inquiry and exercised due diligence. Further, if e-mails or correspondence do exist and Defendant UPS believes they are privileged, it should include those documents on the

privilege log. Therefore, Merriweather's request to compel documents pursuant to RPD No. 9 is GRANTED.

**REQUEST NO. 10:** A copy of each non-privileged memorandum, letter, document, e-mail, or report sent by you to any person or entity regarding any plaintiff herein, the defendant driver*(s)*, or the incident made the basis of this suit.

Merriweather requests a copy of each non-privileged memorandum, letter, document, e-mail, or report sent by Defendant UPS regarding Plaintiff, the defendant driver(s), or the wreck. Defendant UPS objects to this request to the extent that it is so overly broad, vague, ambiguous, and not reasonably limited in time and scope that Defendant UPS is unable to respond. (Docket # 26-4). However, as Defendant UPS recognizes, Merriweather limited this RPD in his Motion to Compel to the facts of the incident made the basis of this suit, correspondence regarding late movement of goods, first report of an injury for worker's compensation, and insurance claims to third-parties. (Docket # 29 citing Docket # 24). This limited request is not overly broad, vague, or ambiguous. Accordingly, Defendant UPS should supplement its response to include those communications. Furthermore, any communications that Defendant UPS asserts is protected by attorney-client privilege should be identified on the privilege log. Accordingly, Plaintiff Merriweather's request to compel documents pursuant to RPD No. 10 is GRANTED.

**REQUEST NO. 12:** Any reports, notes, correspondences, records or other documents or items whatsoever made by or within the control or possession of any detective, investigator, etc., having anything whatsoever to do with this vehicular wreck, the damages, the injuries, or any aspect of this lawsuit whatsoever.

Merriweather requests reports, notes, correspondences, records, and/or other documents made by or within the control of any person having to do with this wreck or lawsuit. Merriweather asserts that this request would include measurements made at the scene. Defendant UPS objects to this request as overly broad, disproportionate, and protected by the attorney-client

privilege and work-product doctrine. (Docket # 26-4). Over its objections, Defendant UPS points to the photographs taken by its insurance adjuster. (*Id*.).

Merriweather argues that Defendant UPS should disclose what is not being produced both within its response and on the privilege log. Defendant UPS argues that it has disclosed reports that were prepared by its insurance adjuster on the privilege log. Accordingly, Merriweather's request to compel documents pursuant to RPD No. 12 is GRANTED. Defendant UPS shall supplement its response to make clear what documents are responsive to RPD No. 12, including those listed on the privilege log, and affirmatively state that it has no other responsive documents.

## IV. TRIP IN QUESTION
**REQUEST NO. 1:** COLOR COPIES of front **and** back of all driver's logs (*i.e.* records of duty status), whether kept officially or unofficially, for thirty (30) days prior to the collision and thirty (30) days after the collision. 49 CFR § 395. (Counsel for the plaintiff will reimburse reasonable charges for this upon request.) (NOTE: Plaintiff reserves the right to ask for a full six months of the driver's logs, should plaintiff deem it necessary to obtain same, and specifically requests that a full six months of logs be retained until the conclusion of this case.)

Merriweather requests color copies of all driver's logs for thirty days prior to and thirty days after the collision. Defendant UPS objects to this request as overly broad and disproportionate to the needs of the case. (Docket # 26-4). Over its objections, Defendant UPS points to Defendant Semmler's logs for the eight days prior to the collision. (*Id*.).

Merriweather argues that he has not received the color logs as requested. Further, Merriweather argues that he only received logs for the day of the collision and seven days before the collision. Defendant UPS contends that it has produced all of the logs that is has with regard to Defendant Semmler at the time of the collision.

Defendant UPS argues that the Federal Motor Carrier Safety Administration Regulations only require a carrier to maintain driver's logs for six months and there was no violation of Defendant Semmler's logs for the relevant seven days prior to the collision nor was there any indication that Defendant Semmler's hours of service were at issue. Defendant UPS cannot be compelled to produce non-existent documents. *Peavey v. Univ. of Louisville*, No. 3:09-CV-00484-R, 2011 WL 1106751, at *2 (W.D. Ky. Mar. 23, 2011). Accordingly, Merriweather's request to compel documents pursuant to RPD No. 1 is DENIED.

> **REQUEST NO. 2:** *Hours of Service* - Produce those materials which substantiate the driver's hours of service for the seven (7) days before the collision as well as the day of the collision, which specifically include, but are not limited to those required by 49 CFR § 395.8(k)(1) and the Department of Transportation interpretations set forth in its answer to Question 10. (Plaintiff's counsel will agree to provide a list of those items required to be kept pursuant to this regulation, as well as a copy of the regulation and interpretation, upon request. Plaintiff further reserves the right to request six (6) months of this information if, in Plaintiffs sole discretion, it is deemed necessary. All such materials should be retained until the conclusion of this case.)

Merriweather requests materials which substantiate the driver's hours of service for seven days before and the day of the wreck. Defendant UPS objects to this request as overly broad and disproportionate to the needs of the case. (Docket # 26-4). Over its objections, Defendant UPS asserts that it is conducting a reasonable search for responsive documents and will supplement its response on receipt. (*Id.*).

Merriweather argues that no documents have been produced. Conversely, Defendant UPS asserts that it referred to Defendant Semmler's logs produced and labeled UPS 1021-1028 in its March 2, 2018 letter. Defendant UPS asserts that is has no further documents responsive to this request. (Docket # 29). However, in the March 2, 2018 letter, Defendant UPS only references those specific labeled documents in response to Trip in Question, Request for Production No. 1.

(See Docket # 29-1, Request for Production No. 1). Defendant UPS shall supplement its response to make clear what documents are responsive to RPD No. 2 and affirmatively state that it has no other responsive documents. Merriweather request to compel documents pursuant to RPD No. 2 is GRANTED.

> **REQUEST NO. 5:** Copies of all bills of lading for the truck and trailer involved in the collision for the seven days prior to the collision, the day of the collision, and the day after the collision.

> **REQUEST NO. 6:** All documents reflecting any agreement between any broker, shipper, or other entity or person and the Defendants that reflect how the Defendants were hired, employed, contracted with, assigned loads, or otherwise came to carry the cargo and goods on the tractor trailer the day of the wreck.

Merriweather requests copies of all bills of lading for the truck and trailer involved in the collision for the seven days prior to the collision, the day of the collision, and the day after the collision. RPD No. 6 requests all documents reflecting any agreements between other entities or persons and Defendant UPS that reflect how Defendant UPS hired, employed, contracted with, assigned loads, or others came to carry the cargo on the date of the accident. Defendant UPS objected to both RPDs as disproportionate to the needs of the case. (Docket # 26-4). Defendant UPS further objected to RPD No. 6 as overly broad. (*Id.*). Over its objections to both RPDs, Defendant UPS stated "none." (*Id.*).

Pursuant to Federal Rule of Civil Procedure 26(g)(1), Defendant UPS shall supplement its response and state "with sufficient specificity" that it exercised due diligence and reasonably inquired into whether these documents ever existed and what happened to them if they did exist. *See Heller v. City of Dall.*, 303 F.R.D. 466, 485 (N.D. Tex. 2014). Accordingly, Merriweather's request to compel documents pursuant to RPD Nos. 5 and 6 is GRANTED.

**V. SAFETY**

**REQUEST NO. 1:** A copy of the wreck register maintained as required by 49 CFR § 390.15, to include the collision with the plaintiff and all wrecks three (3) years prior.

Merriweather requests copies of the wreck registers. Defendant UPS objects to the request as overly broad and disproportionate to the needs of the case. (Docket # 26-4).

Merriweather argues that Defendant UPS is required to maintain an accident register per the Federal Motor Carrier Safety Regulations. Merriweather contends that that these documents are relevant as they potentially show the foreseeability of this type of collision. Defendant UPS argues that an accident register for the entire UPS company would not demonstrate the foreseeability of a UPS vehicle being rear-ended by a third party. Defendant UPS contends that any accident register showing accidents involving UPS drivers in other states is irrelevant to this case and adds nothing to a determination regarding Defendant Semmler's conduct in this case. Further, Defendant UPS contends that even if the document is relevant, company-wide discovery of accidents across the country for a period of three years predating the wreck is overly broad and unduly burdensome.

Merriweather fails to explain how the wreck registers for three years prior to and including the accident is relevant to his case "bears on, or that reasonably could lead to other matter that could bear on" Merriweather's claims or Defendant UPS' defenses. *Albritton v. CVS Caremark Corp.*, No. 5:13-CV-00218-GNS-LLK, 2016 WL 3580790, at *3 (W.D. Ky. June 28, 2016) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted)). Under Section 390.15, the information required to be included in the accident register is the (i) Date of accident, (ii) City or town, or most near, where the accident occurred and the State where the accident occurred, (iii) driver's name, (iv) number of injuries, (v) number of fatalities, and (vi) whether hazardous materials were released. 49 CFR § 390.15. Under Section 390.15,

Defendant UPS would not be required to list any other details regarding the accident(s). *Id.* Indeed, it is unlikely that any of the information listed in the wreck register would have any bearing on the foreseeability of the wreck or show any similarities to the wreck itself. Accordingly, Merriweather's request to compel documents pursuant to RPD No. 1 is DENIED.

> **REQUEST NO. 2:** A copy of all company manuals, policies, and guidelines covering truck safety, driver training, fleet safety, safety programs, driver's standards, and the driver's handbook, in effect on the date of the collision, to specifically include UPS'
>
> 1) Defensive Driving School Manual,
> 2) Accident Investigation Workshop,
> 3) Annual Space and Visibility Ride,
> 4) Certification Courses for Driver Trainers and Supervisors,
> 5) Driving in conditions that impact a driver's visibility or a tractor trailer's traction.
>
> **REQUEST NO. 5:** A copy of the index of the curriculum at UPS' driver training school at the time of the wreck.
>
> **REQUEST NO. 6:** A copy of the index for all UPS safety training courses for drivers at the time of the wreck, to specifically include documentation of computer based training.
>
> **REQUEST NO. 7:** A copy of all training materials for drivers in weather conditions impacting a driver's visibility or a truck's traction to specifically include driving in the rain and on wet roads.
>
> **REQUEST NO. 9:** A complete list or index of each driver safety training film, video, videotape, videocassette, audio cassette, computer program, simulator, driver diagnostic record or test, maintained by your company, or used by your company and its personnel, agents, or employees during the year of the collision and three (3) years prior, together with any associated handouts.

In RPD Nos. 2, 5, 6, 7, and 9, Merriweather requests copies and lists of all training materials and manuals dealing with driver safety. Defendant UPS objects to these requests as overly broad and disproportionate to the needs of the case. (Docket # 26-4). Defendant UPS asserts that despite its objections, it has provided substantial information to Merriweather and produced the following documents: Defendant Semmler's personnel file, including his space and

visibility ride records; Defendant Semmler's driver qualification file, including his background report; the Feeder Driver Training Manual, including the detailed table of contents; records of Defendant Semmler's feeder driver training, including the daily checklist of topics covered; and Defendant Semmler's Employee History Profile, including a detailed list of Defendant Semmler's training history.

Defendant UPS argues that there is no need to produce "all company manuals, policies, and guidelines covering truck safety" or "driver training" or "fleet safety." Conversely, Merriweather argues that these types of documents show what Defendant UPS trained its driver to do in the situation before the jury, whether the driver followed that training, and whether the company used the resources available to it, both known and available to be known to supervise and train its driver.

RPD No. 2 is overly broad in scope as it seeks all company manuals, policies, and guidelines covering truck safety for every employee rather than just the training materials used for Defendant Semmler. To the extent that Defendant UPS has any other records that correspond to RPD No. 2 and that were used to train Defendant Semmler, Defendant UPS shall produce those records. However, Defendant UPS is not required to produce every company manual, policy, and guideline covering truck safety for every employee. Accordingly, RPD No. 2 is GRANTED in part and DENIED in part.

RPD No. 5 is overly broad in scope as it seeks a copy of the index of the curriculum at Defendant UPS' driver training school at the time of the wreck. Furthermore, Merriweather concedes that he received Defendant Semmler's class checklist indicating five days of driver training. Merriweather does not explain why Defendant Semmler's checklist of driver training is

insufficient nor does he explain why an index of the curriculum at UPS' driver training school at the time of the wreck is relevant. Merriweather's request to compel documents pursuant to RPD No. 5 is DENIED.

RPD No. 6 is overly broad in scope as it seeks an index for all driver safety training materials and is not limited to the type of safety materials that are relevant to this case. Defendant UPS asserts that the checklist of driver training functions as an index as it provides a list of the training topics each day of feeder driver training. However, Defendant UPS does not state whether there is an actual index of the curriculum at UPS' driver training school. Accordingly, Defendant UPS shall supplement its response to include whether or not there are any other responsive documents. Merriweather's request to compel documents pursuant to RPD No. 6 is GRANTED in part and DENIED in part.

RPD No. 7 is overly broad in time and scope as the request is not limited to the training materials in existence at the time of the wreck. Additionally, Defendant UPS asserts that it produced the training materials relating to weather conductions as demonstrated by the Feeder Driver Manual, which includes a section on skid control, traction issues, and hydroplaning. Accordingly, Merriweather's request to compel documents pursuant to RPD No. 7 is DENIED.

RPD No. 9 is overly broad in scope as the request seeks all driver safety training materials and is not limited to the type of safety materials that are relevant to this case. Additionally, Defendant UPS asserts that it produced a complete list of all of Defendant Semmler's training and provided 77 pages of the Feeder Driver Training Manual, including the detailed table of contents. Defendant UPS asserts that this serves as the list of driver safety

materials. Accordingly, Merriweather's request to compel documents pursuant to RPD No. 9 is DENIED.

## VII. FEDERAL REPORTS
**REQUEST NO. 1:** Each Motor Carrier Identification Report prepared by your company, its employees, officers, or agents for the past five (5) years.

In Federal Reports, RPD No. 1, Plaintiff Merriweather requests each Motor Carrier Identification Report prepared by Defendant UPS for the past five years. Defendant UPS objects to this request because it is overly broad and disproportionate to the needs of the case. (Docket # 26-4).

Merriweather asserts that the Motion Carrier Identification Report is completed biannually and is publicly filed. However, Defendant UPS contends that the information is irrelevant and has no relation to the narrow issues in the case. (Docket # 29). Defendant UPS attaches a blank MCS-150 form, which requests the basic information for a motor carrier, such as the legal business name, address, phone numbers, company operations, operation classifications, number of vehicles that will be operated in the U.S. and number of total drivers. (Docket # 29-8).

Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. *Jackson v. E-Z-Go Div. of Textron, Inc.*, No. 3:12-CV-154-TBR, 2016 WL 6211719, at *3 (W.D. Ky. Oct. 21, 2016) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). As explained above, Plaintiff Merriweather bears the initial burden of demonstrating relevance. *Id.* (citations omitted). The basic information that Defendant UPS has provided on the MCS-150 forms would likely not lead to evidence that Defendant UPS was/is negligent in hiring, training, entrustment,

supervision, retention, and maintenance. Moreover, Merriweather does not specify how exactly this information relates to any of the claims or defenses in this case other than the fact that it contains basic information about UPS as a company. Therefore, Merriweather's request to compel documents pursuant to RPD No. 1 is DENIED.

### Defendant UPS' Privilege Log

Lastly, Merriweather argues that Defendant UPS' privilege log (Docket # 26-10) is insufficient for two reasons: 1) Defendant UPS fails to include all parties that have received the alleged privileged documents, rather than just the original recipients; and 2) Defendant UPS does not identify which alleged privileged documents corresponded to each of the responses to requests to produce.

Defendant UPS contends that Merriweather waived his right to complain about the privilege log because he has failed to produce his own privilege log. Notably, Defendant UPS fails to cite any supporting case law that supports its assertion.

Rule 26(b)(5) provides that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or ... things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *Polylok, Inc. v. Bear Onsite, LLC*, No. 3:12-CV-00535-DJH-CHL, 2017 WL 1102698, at *5 (W.D. Ky. Mar. 23, 2017) (quoting FED. R. CIV. P. 26(b)(5)). The objecting party must be specific enough in its objections to support its privilege, but not too specific so as to divulge privileged information. *Id.* "In order to meet the requirements of the Federal Rules and

justify a claim of privilege, therefore, a privilege log must contain sufficient factual content to allow the court to reach the conclusion that each element of that privilege is fulfilled." *Mafcote, Inc. v. Federal Ins. Co.*, No. 3:08-CV-11, 2010 WL 1929900, at *5 (W.D. Ky. May 12, 2010). Courts in this circuit and elsewhere have explained that privilege logs should include the following elements:

> "(a) The author(s) and all recipients (designated so as to be clear who is the sender and who the receiver), along with their capacities/roles/positions;
> (b) The document's date;
> (c) The purpose and subject matter of the document; and
> (d) The nature of the privileged asserted, and why the particular document is believed to be privileged."

*See Polylok, Inc. v. Bear Onsite, LLC*, 2017 WL 1102698, at *6 (W.D. Ky. Mar. 23, 2017); *Madison v. Nationwide Mut. Ins. Co.*, No. 1:11-CV-157-R, 2012 U.S. Dist. LEXIS 141319, at *8 (W.D. Ky. Sep. 28, 2012); *Mafcote, Inc. v. Fed. Ins. Co.*, 2010 WL 1929900 (W.D. Ky. May 12, 2010); *see also Osborn v. Griffin*, No. 11-89-WOB-CJS, 2013 WL 5221663, at *2 (E.D. Ky. Sep. 17, 2013); *Brubaker v. Encompass Prop. & Cas. Co.*, 2008 U.S. Dist. LEXIS 40133, at *2 (E.D. Mich. May 19, 2008); *Jones v. Hamilton County Sheriff's Dep't*, 2003 WL 21383332, at *4 (S.D. Ind. June 12, 2003); *Allen v. Chicago Transit Auth.*, 198 F.R.D. 495, 498 n. 1 (N.D. Ill. 2001); *Allendale Mut. Ins. Co. v. Bull Data Sys.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992); *Smith v. Logansport Cmty. Sch. Corp.* 139 F.R.D. 637, 648-49 (N.D. Ind. 1991).

Here, while Defendant UPS' privilege log includes one receiver per document, it does not indicate whether it includes all of the receivers. Knowing the identity of each receiver of the document(s) is helpful in determining whether the documents are protected by privilege. *See United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999) (quoting *Burkhead & Scott, Inc. v. City of Hopkinsville*, No. 5:12-CV-00198-TBR, 2014 U.S. Dist. LEXIS 166374, at *7 (W.D. Ky.

Dec. 1, 2014) (The attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties)).

Additionally, the produced privilege log does not explain which documents correspond to each request to produce. Defendant UPS has asserted objections to a total of fourteen requests to produce (only five of which are at issue in this motion) based on attorney-client and/or work-product privilege, and has listed fourteen documents on the produced privilege log. Since the burden is on Defendant UPS to be "specific enough in its objections to support its privilege," it is incumbent on Defendant UPS to match the alleged privileged documents to the responses to requests to produce. *See Polylok, Inc. v. Bear Onsite, LLC*, 2017 WL 1102698, at *7 (W.D. Ky. Mar. 23, 2017) (citing United States v. Moss, 9 F.3d 543, 550 (6th Cir. 1993) (The burden to establish the applicability of the privilege is upon the defendants.)). Therefore, in addition to the revisions listed above, Defendant UPS should supplement the privilege log with the required information or produce the documents.

### Conclusion

IT IS HEREBY ORDERED that Merriweather's Motion to Compel is GRANTED in part and DENIED in part, as described above. (Docket # 26).

**Lanny King, Magistrate Judge**
**United States District Court**

July 25, 2018

c:      Counsel

41